**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona State Board for Charter Schools, et al., <br><br> Plaintiff, <br><br> vs. <br><br> United States Department of Education, et al., <br><br> Defendant. | No. CV-05-1809-PHX-FJM <br><br> **ORDER** |

The Arizona State Board for Charter Schools and eleven for-profit charter school operators (Plaintiffs) seek review of a determination by the Department of Education (Defendant) that for-profit charter schools are not eligible to receive federal funds under the Elementary and Secondary Education Act (ESEA), 20 U.S.C. §§ 6301-7941 (2003), and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1401-1482 (Supp. 2004). The court has before it Plaintiffs' Motion for Summary Judgment (doc. 15), Defendant's Response and Cross-Motion for Summary Judgment (doc. 17), Plaintiffs' Response and Reply (doc. 20), Defendant's Reply (doc. 21), and Plaintiffs' Sur-Reply (doc. 24). For the reasons set forth below, we grant Defendant's Cross-Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment.

I.

In 2003, the Department of Education's (DOE) Office of Inspector General audited the Arizona Department of Education's (ADE) distribution of federal funds pursuant to the IDEA and the ESEA. On March 18, 2005, the DOE concluded that, for the period from October 1, 2000 through September 30, 2001, the ADE improperly awarded federal funds in the amount of $1,129,006 to 29 private, for-profit entities that operated at least 75 charter schools in the State of Arizona (hereinafter referred to as "March 18th Determination"). The DOE determined that the charter schools' for-profit status prevented them from qualifying as "local education agencies," as that term is defined under the relevant statutes, and therefore the schools were ineligible for federal funding. Although the DOE did not seek recovery of previously granted funds, the March 18th Determination prohibits any future grant of federal funds to for-profit Arizona charter schools. Plaintiffs now challenge the DOE's conclusion.

II.

The IDEA and the ESEA authorize grants by the DOE to the States through a "state educational agency" (SEA), such as the Arizona Department of Education. The statutes further authorize an SEA to distribute such grant money through sub-grants to a "local educational agency" (LEA), which is defined, in relevant part, as "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools." 20 U.S.C. § 1401(19); 20 U.S.C. § 7801(26).

Under the IDEA and the ESEA, an "elementary school" is defined as "a nonprofit institutional day or residential school, including a public elementary charter school, that provides elementary education, as determined under State law." 20 U.S.C. § 1401(6); 20 U.S.C. § 7801(18) (emphasis added). Similarly, the statutes define "secondary school" as "a nonprofit institutional day or residential school, including a public secondary charter school that provides secondary education, as determined under State law." 20 U.S.C. § 1401(27); 20 U.S.C. § 7801(38) (emphasis added). Both definitions provide that, in order to qualify as an elementary or secondary school, an

1 institutional day or residential school must be "nonprofit." The parties disagree whether the
2 nonprofit restriction also applies to charter schools.

### III.

4 We first consider whether the DOE's Determination is a final agency action as that term is
5 defined in the Administrative Procedure Act, 5 U.S.C. § 704, and is therefore subject to review in
6 federal court. Under Bennett v. Spear, 520 U.S. 154, 177-78 (1997), a final agency action must
7 "mark the 'consummation' of the agency's decisionmaking process," and must either determine
8 "rights or obligations" or occasion "legal consequences." Here, the parties agree that no further
9 agency review of the March 18th Determination is available, and therefore it is a "consummation
10 of the agency's decisionmaking process." Moreover, there is no dispute that the DOE's
11 Determination results in "legal consequences," namely the prohibition of future federal funding of
12 for-profit charter schools. Therefore, the March 18th Determination is subject to review under the
13 standard set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837,
14 844 (1984).

15 As is appropriate in any case that turns on statutory construction, we begin with the language
16 of the statute. "If the intent of Congress is clear, that is the end of the matter; for the court . . . must
17 give effect to the unambiguously expressed intent of Congress." Id. at 842-43. Alternatively, if the
18 statute is silent or ambiguous with respect to the specific issue, "the court does not simply impose
19 its own construction on the statute, . . . [instead] the question for the court is whether the agency's
20 answer is based on a permissible construction of the statute." Id.

21 Within this legal framework, we now turn to the language of the statute.

### IV.

23 The central focus of analysis in the instant case is the appropriate interpretation of the word
24 "including" within the definitions of "elementary and secondary schools." Our statutory construction
25 is dictated by the plain language of the statutes and by a common sense application of the principles
26 underlying the statutes. A natural reading of the statutory language supports the DOE's position that

1  only nonprofit, public[1] charter schools are eligible for federal funding under the ESEA and the IDEA.
2  Both in general and legal usage, "including" is ordinarily defined as a term of illustration, meaning
3  that what follows is an example of the preceding whole. See The American Heritage Dictionary of
4  the English Language, 887 (4th ed. 2000) (defining "including" as "[t]o take in as a part, element, or
5  member; [t]o contain as a secondary or subordinate element; [t]o consider with or place into a group,
6  class or total"); see also Black's Law Dictionary 777-78 (8th ed. 2004) (defining "include" as "[t]o
7  contain as a part of something"). According to this plain language construction, "including" indicates
8  that the term "charter schools" is a subset of the preceding category "nonprofit schools." In other
9  words, all schools, including charter schools, must be nonprofit in order to receive federal funds.

10  Plaintiffs posit an alternative definition of "including," arguing that the statutory language is
11  ambiguous, and that the word "including" bridges two conflicting terms. Specifically, they contend
12  that "nonprofit . . . school" is inconsistent with "public . . . charter school" because the latter clearly
13  includes for-profit, as well as nonprofit schools. Plaintiffs argue that in order to overcome this kind
14  of inconsistency, courts have rejected the ordinary meaning of the word "including," and instead have
15  applied an expansive definition, whereby "including" is synonymous with the word "and." Under
16  this theory, the definition of "public . . . charter schools" includes <u>all</u> public charter schools,
17  irrespective or whether they are profit or nonprofit.

18  The cases cited by Plaintiffs to support their argument are inapplicable here. In Adams v.
19  Dole, 927 F.2d 771, 774 (4th Cir. 1991), the court rejected the common illustrative interpretation of
20  "including" and instead adopted the expansive definition whereby "including" means "and" or "in
21  addition to." The Fourth Circuit offered the following example in which the expansive definition is
22  appropriate: "all licensed drivers, including applicants for driver's licenses, shall take an eye exam."
23  Id. at 777 (emphasis in original). The court reasoned that, "[c]learly, the "including" phrase does
24  more than merely provide examples." Id. In Adams, the court was compelled to adopt a strained
25  interpretation of the statutory language in order to achieve a rational outcome. That is not the case

---

[1] Because our decision rests on whether for-profit charter schools are eligible for federal funding, we need not reach the question whether the charter schools, which are owned and operated by private entities, are in fact "public schools" under the relevant statutes.

before us. Here, the application of the expansive definition would turn what otherwise is a rational interpretation into one that is counterintuitive.

Our interpretation is reinforced by the sequence of legislative amendments to the statutes. Originally, the definitions of "elementary school" and "secondary school" in both the IDEA and the ESEA referred broadly to all "day or residential schools." In the Improving America's Schools Act of 1994, Pub. L. No. 103-382, 108 Stat. 3888, however, Congress added the qualifying words "nonprofit" and "institutional" to the definitions. In December 2004, Congress again amended the definitions of "elementary school" and "secondary schools" to include a "public . . . charter school," but left untouched the general rule that qualifying schools must be "nonprofit." See Charter Schools Expansion Act of 1998, Pub. L. No. 105-278, 112 Stat. 2689. By requiring eligible schools to be "nonprofit," Congress expressed its clear intent that for-profit schools are not eligible to receive federal grants. The addition of "charter schools" to the category of eligible public schools, did not obviate the requirement that public schools must be nonprofit. If Congress had intended to dramatically change the scheme of public education in America to provide federal funding of for-profit schools, it would have done so clearly and explicitly.

Accordingly, we conclude that, on its face, the statute sufficiently expresses the congressional mandate that in order to be eligible for federal funds, charter schools must be nonprofit. Even if we had concluded that the statutory language is ambiguous, we would nevertheless reach the same result. Under the standard set forth in Chevron, the DOE's construction of the statute is "well within the bounds of reasonable interpretation," and hence would be entitled to deference. 467 U.S. at 844.

**IT IS ORDERED DENYING** Plaintiffs' Motion for Summary Judgment (doc. 15) and **GRANTING** Defendants' Cross-Motion for Summary Judgment (doc. 17).

DATED this 11th day of October, 2005.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge